BRIAN J. STRETCH (CABN 163973)
Acting United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

ROBIN L. HARRIS (CABN 123364)
BENJAMIN KINGSLEY (NYBN 4758389)
Assistant United States Attorneys
    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6937
    FAX: (415) 436-7234
    benjamin.kingsley@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 14-0306 WHA |
|     Plaintiff, |     CR 08-0222 WHA |
| v. | UNITED STATES' SENTENCING MEMORANDUM |
| LUKE D. BRUGNARA, | Sentencing Date: October 8, 2015 |
|     Defendant. | Court: Hon. William Alsup |

SENTENCING MEMORANDUM
CR 14-306 & CR 08-222 WHA

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

DISCUSSION ............................................................................................................................. 2

    A.    Unresolved Objections to the PSR in CR 14-306 ................................................... 2

        1.    Objection 1 – Purchase Price and Sales ..................................................... 3

        2.    Objection 2 – Transaction Premised on Museum ....................................... 3

        3.    Objection 3 – Barbato Testimony ............................................................... 3

        4.    Objection 4 – Window in Garage ............................................................... 3

        5.    Objection 5 – $3 Million Price for Degas ................................................... 4

        6.    Objection 6 – Victim Impact Statements of Long and Maibaum ............... 4

        7.    Objection 7 – Paragraphs 37 and 38 ........................................................... 4

        8.    Objection 8 – Charitable or Educational Organization Enhancement ........ 4

        9.    Objection 9 – Criminal History Score for Prior Federal Convictions ........ 4

        10.    Objection 10 – Defendant's Misconduct in Prior BOP Custody ................ 5

        11.    Objection 11 – Other Criminal Conduct .................................................... 5

    B.    The Defendant's Guidelines Calculation for CR 14-306 ........................................ 5

        1.    Group 1 – Fraud and False Declarations .................................................... 5

        2.    Group 2 – Contempt of Court and Escape ................................................. 7

        3.    Total Grouping ............................................................................................ 8

        4.    Criminal History and Guidelines Range for CR 14-306 ............................ 8

    C.    A Sentence of 137 Months in CR 14-306 Is Sufficient but Not Greater than Necessary to Comply with 18 U.S.C. § 3553(a) ..................................................... 9

        1.    Nature and Circumstances of the Offense .................................................. 9

        2.    History and Characteristics of Defendant ................................................. 12

    D.    A Consecutive Sentence of 12 Months of Imprisonment for CR 08-222 Is Appropriate ............................................................................................................ 13

    E.    A Consecutive Sentence of 471 Days of Summary Contempt Is Appropriate ................ 14

    F.    Restitution ............................................................................................................. 14

CONCLUSION ................................................................................................................................15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*United States v. Cohen*,
    742 F.3d 856 (9th Cir. 2013) .................................................................................................. 6

*United States v. Dare*,
    425 F.3d 634 (9th Cir. 2005) .................................................................................................. 2

*United States v. Givens*,
    767 F.2d 574 (9th Cir. 1985) .................................................................................................. 2

*United States v. Houston*,
    217 F.3d 1204 (9th Cir. 2000) ................................................................................................ 2

*United States v. Ibarra*,
    737 F.2d 825 (9th Cir. 1984) .................................................................................................. 5

*United States v. Kimball*,
    975 F.2d 563 (9th Cir. 1992) .................................................................................................. 2

*United States v. Monaco*,
    852 F.2d 1143 (9th Cir. 1988) ............................................................................................ 2, 5

*United States v. Petitto*,
    767 F.2d 607 (9th Cir. 1985) .................................................................................................. 2

*United States v. Real-Hernandez*,
    90 F.3d 356 (9th Cir. 1996) .................................................................................................... 2

*United States v. Sarno*,
    73 F.3d 1470 (9th Cir. 1995) .................................................................................................. 2

*United States v. Treadwell*,
    593 F.3d 990 (9th Cir. 2010) .................................................................................................. 6

## FEDERAL STATUTES

18 U.S.C. § 3553 .............................................................................................. 4, 9, 14, 15

18 U.S.C. § 3661 .............................................................................................................. 4, 5

18 U.S.C. § 3663(b)(4) ........................................................................................................ 14

18 U.S.C. § 401(3) ................................................................................................................ 7

## FEDERAL RULES

Federal Rule of Criminal Procedure 32(i)(3)(B) ................................................................... 2

U.S.S.G. § 2B1.1 .......................................................................................................... 4, 5, 6

U.S.S.G. § 2J1.1 .................................................................................................................... 7

U.S.S.G. § 2J1.2 ................................................................................................................ 7, 8

U.S.S.G. § 4A1.2(a)(2) .................................................................................................................. 9

U.S.S.G. § 6A1.3(a) ..................................................................................................................... 2

U.S.S.G. § 7B1.1(a)(2)................................................................................................................ 13

U.S.S.G. § 7B1.4........................................................................................................................ 13

# INTRODUCTION

On May 19, 2015, defendant was convicted by a jury in CR 14-306 of two counts of wire fraud, one count of mail fraud, one count of making false declarations to a court, one count of escape, and one count of contempt. Dkt. 631. On May 29, 2014, a petition was filed in CR 08-222 alleging that defendant violated the terms of his supervised release. CR 08-222 Dkt. 247. Though this Court has yet to resolve the supervised release violation, defendant violated his supervised release in CR 08-222 by committing the underlying offenses for which he was convicted in CR 14-306.

With respect to CR 14-306, U.S. Probation recommends that defendant is in Criminal History Category IV, and recommends an Offense Level of 28, resulting in a Guidelines range for defendant of 110 to 137 months of imprisonment. Probation then recommends that defendant's Guidelines range be reduced two levels, to 26, based on the anticipated amendment of the Guidelines set to take effect on November 1, 2015, resulting in a range of 92 to 115 months of imprisonment. Probation next recommends what it describes as an upward variance from that range, to 130 months of imprisonment, to be followed by a consecutive 471 days (or 15 months and 14 days) of summary contempt imposed on defendant by this Court during trial, for a total sentence of (approximately) 145 months and 14 days custody. With respect to CR 08-222, Probation calculates defendant's Guidelines range as 6 to 12 months of imprisonment, with a maximum of one year, and recommends a consecutive sentence of 12 months of imprisonment.

The government agrees with Probation's calculation of defendant's Guidelines range in CR 14-306 as 110 to 137 months of imprisonment. The government disagrees that a downward adjustment of this range is appropriate, and recommends a sentence in CR 14-306 of 137 months of imprisonment, at the high end of the Guidelines. The government also agrees with Probation's calculation of the Guidelines range in CR 08-222 and agrees with Probation's recommendation of a 12-month consecutive sentence for the supervised release violation in that case. Finally, the government recommends that this Court impose, as previously ordered, 471 days of imprisonment for defendant's summary contempt, to be served consecutive to any other sentence. The government thus recommends a total sentence of 149 months of imprisonment followed by 471 consecutive days of imprisonment for the summary contempt, followed by three years of supervised release, and restitution.

# DISCUSSION

### A.  Unresolved Objections to the PSR in CR 14-306

The defendant has raised 11 objections to the PSR that remain unresolved.  Under Federal Rule of Criminal Procedure 32(i)(3)(B), a district court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."  Such factual disputes are resolved using a preponderance of the evidence standard.  *United States v. Dare*, 425 F.3d 634, 642 (9th Cir. 2005) ("As a general rule, the preponderance of the evidence standard is the appropriate standard for factual findings used for sentencing.").

A district court may "consider a wide range of information in arriving at the sentencing decision."  *United States v. Given*s, 767 F.2d 574, 585 (9th Cir. 1985).  "There is no general right to an evidentiary hearing at sentencing, and where a defendant 'fails to present any facts in rebuttal' to the government's evidence, there need be no new evidentiary hearing."  *United States v. Kimball*, 975 F.2d 563, 568 (9th Cir. 1992) (citing *United States v. Petitto*, 767 F.2d 607, 611 (9th Cir. 1985) and quoting *United States v. Monaco*, 852 F.2d 1143, 1149 (9th Cir. 1988)); *see also United States v. Real-Hernandez*, 90 F.3d 356, 362 (9th Cir. 1996) ("There is no general right to an evidentiary hearing at sentencing.").  The Ninth Circuit has repeatedly held that "[a] district court may permissibly deny a hearing where a defendant is allowed to rebut the recommendations and allegations of the presentence report either orally or through the submission of written affidavits or briefs."  *United States v. Sarno*, 73 F.3d 1470, 1502–03 (9th Cir. 1995).  "In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."  U.S.S.G. § 6A1.3(a); *see also United States v. Houston*, 217 F.3d 1204, 1209 (9th Cir. 2000) (same).

Some of defendant's objections are factual, but defendant has generally failed to submit any evidence that controverts the facts to which he has objected.  Other objections appear to be theoretical, premised not on the substance of the information contained in the PSR, but rather its appearance in the PSR.  Defendant has offered no legal basis for these theoretical objections.  With the exception of

Objection 4, regarding the window in the garage, defendant's objections should be resolved without modifying the PSR. The government's position on each of the objections is set out below in turn.

### 1. Objection 1 – Purchase Price and Sales

These purchase prices are reflected in the emails admitted as evidence at trial, and demonstrate through the course of dealings that defendant stated that he would buy the artwork at those prices. Trial Tr. at 634–660 (testimony of Long discussing email chain of prices); *see also* Trial Exh. 56–62. He obviously never intended to pay for them, and whether he formally "agreed" in a contractual sense is irrelevant. The Court should resolve this objection without modifying the PSR.

### 2. Objection 2 – Transaction Premised on Museum

Defendant's repeated misrepresentations that he would be putting the artwork in a museum were established by emails introduced into evidence at trial. Trial Tr. at 673; *see also* Trial Exh. 59 ("Thank you. I look forward to putting them in my museum."). Both Maibaum and Long testified that this was important to them. *See, e.g.*, Trial Tr. at 653–54 (Long discussing importance of museum); *id.* at 369 (Maibaum discussing importance of a museum, particularly for Picassos and Degas). Defendant's view that the artwork was not worthy of a museum is irrelevant. The Court should resolve this objection without modifying the PSR.

### 3. Objection 3 – Barbato Testimony

Defendant's objection does not characterize any of the portions of the PSR discussing Barbato's testimony as inaccurate. They are accurate. *See, e.g.*, Trial Tr. at 1248–53, 1299 ("I told him that I had a better shot walking across the street, successfully doing brain surgery, than placing a museum loan for [defendant] where [defendant was] the landlord and the tenant."). This Court should resolve this objection without modifying the PSR.

### 4. Objection 4 – Window in Garage

Defendant is correct that Rose Long did not testify at trial that she looked into the window of defendant's garage. This information appears only in an FBI 302 report. Given that it has no relevance to defendant's appropriate sentence or Guidelines calculation, this Court need not resolve this objection to adequately sentence defendant.

### 5. Objection 5 – $3 Million Price for Degas

Rose Long quoted a price of $4 million for the Degas to defendant in an email, and he instructed her to send him the artwork. Trial Tr. at 650–60; Trial Exh. 64 ("I trust you to send my Degas, 14 Year Old Little Dancer Bronze and for you only, don't please tell anyone, $4 million to you."). Later, invoices entered into evidence by Harvey Schochet showed that Long invoiced defendant $3 million for the sculpture. Trial Tr. at 1344; Trial Exh. 84. There is no evidence that the price was anything other than these numbers. The Court should resolve this objection without modifying the PSR.

### 6. Objection 6 – Victim Impact Statements of Long and Maibaum

Defendant objects to inclusion of the victim impact statements of Long and Maibaum. Inclusion of the victim impact statements in the PSR is plainly appropriate, just as inclusion of defendant's own self-serving statements is appropriate. Inclusion of the victim statements does not mean the PSR resolves the substance of the statements. This objection should be resolved without modifying the PSR. Restitution is discussed separately below.

### 7. Objection 7 – Paragraphs 37 and 38

Defendant objects to the inclusion of these paragraphs, which detail the many lies told by defendant during the course of these two cases. They include information that is plainly relevant in sentencing defendant under § 3553, as part of his personal history and characteristics, the unique manner in which he repeatedly obstructed justice in this case, and his total failure to accept responsibility for anything he says or does. Defendant offers no factual objections to the information in these paragraphs, so they should be considered accurate. Under 18 U.S.C. § 3661, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." This objection should be resolved without modifying the PSR.

### 8. Objection 8 – Charitable or Educational Organization Enhancement

The enhancement at § 2B1.1(b)(9)(A) should be applied, for reasons explained below.

### 9. Objection 9 – Criminal History Score for Prior Federal Convictions

The government agrees with Probation's calculation of defendant's criminal history score, for reasons explained below.

### 10. Objection 10 – Defendant's Misconduct in Prior BOP Custody

This information is contained within paragraph 70, on pages 37 and 38 of the PSR. Defendant offers no substantive objections to these violations despite having been provided with his entire BOP custodial file as part of his motion to recuse the United States Attorney's Office in this case. "In order to challenge successfully information in a presentence report, the information must lack 'some minimal indicium of reliability beyond mere allegation.'" *Monaco*, 852 F.2d at 1148 (9th Cir. 1988) (quoting *United States v. Ibarra*, 737 F.2d 825, 827 (9th Cir. 1984)). This objection should be resolved without modifying the PSR.

### 11. Objection 11 – Other Criminal Conduct

Defendant objects to the inclusion in the report of his other criminal conduct that did not result in a conviction. The government believes that this objection refers to paragraphs 74 through 78 in the final PSR. The information contained in paragraphs 74 through 77 was in defendant's PSR for in CR 08-222, and thus was previously accepted by this Court. Defendant has offered no information to rebut it. The information in paragraph 78 is derived from uncontroverted reports from San Francisco County Jail. Defendant has not contested the factual accuracy of this information, and it is plainly relevant under §§ 3553 and 3661. As a result, this objection should be resolved without modifying the PSR.

### B. The Defendant's Guidelines Calculation for CR 14-306

U.S. Probation has recommended the following Guidelines calculations, with which the government agrees, and which are set forth and explained below.

### 1. Group 1 – Fraud and False Declarations

The offense level for Group 1, for the wire fraud, mail fraud, and false declaration convictions, appears below:

| | | |
|---|---|---|
| a. | Base Offense Level, § 2B1.1(a)(1) | 7 |
| b. | Loss amount > $1 million, § 2B1.1(b)(1)(I) | +16 |
| c. | Charitable or educational enhancement, § 2B1.1(b)(9)(A) | +2 |
| d. | Obstruction of justice, § 3C1.1 | +2 |
| e. | Group subtotal | 27 |

As the government has previously argued to the Court, the loss amount from defendant's fraud is approximately $1.99 million. Dkt. 734, 737. Thus the loss from defendant's offense is between $1 million and $2.5 million. Probation has applied a downward adjustment of two levels to defendant's

range, in anticipation of the amendment of the loss tables in § 2B1.1. That amendment raises the threshold for a +16 enhancement to $1.5 million. Because the government's believes the loss in this case should be $1.99 million, this amendment would not even affect the calculation. Even if it did, there is no basis to apply a variance to a loss calculation based on Guidelines that were not in effect when defendant committed his crime or was sentenced.

Section 2B1.1(b)(9)(A) provides for a two-level enhancement if the offense involved "a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious, or political organization." U.S.S.G. § 2B1.1(b)(9)(A). The section applies "in any case in which the defendant represented that the defendant was acting to obtain a benefit on behalf of a[n] . . . educational . . . organization." *Id*. cmt. n.7(B). Though defendant did not provide any specific information to Long about his imaginary museum, the ordinary meaning of the word is a "building in which interesting and valuable things (such as paintings and sculptures or scientific or historical objects) are collected and shown to the public," or "an institution devoted to the procurement, care, study, and display of objects of lasting interest or value." Merriam-Webster Online Dictionary, "Museum," *available* at http://www.merriam-webster.com/dictionary/museum (last accessed October 1, 2015). The Guidelines do not define the term "educational," but museums are inherently educational with respect to the subjects that they display. Defendant represented that he was acting to obtain a benefit—the artwork—for an educational institution—his imaginary museum.

Applying this enhancement here is also consistent with the purpose motivating it. Though the cases and commentary notes mostly discuss the charitable provision of the enhancement, they make clear that § 2B.1.(b)(9)(A) is designed to increase the culpability of a defendant who pretends to be acting on behalf of an organization with a higher purpose than just profit *See United States v. Cohen*, 742 F.3d 856, 858–59 (9th Cir. 2013) (discussing charitable enhancement); *United States v. Treadwell*, 593 F.3d 990, 1005 (9th Cir. 2010) (same). It does not matter that the victims were also acting in their own self-interest. *Cohen*, 742 F.3d at 859 ("Nor is it significant that Cohen's investors may have been motivated, in part, by a desire to profit personally."). Defendant preyed on Long and Maibaum's wish, self-interested or otherwise, that the artwork, and particularly the Degas, be displayed to the public in a museum.

Defendant does not contest the application of the obstruction of justice enhancement at § 3C1.1. Defendant was convicted of a false declaration regarding the underlying fraud, and this plainly supports the obstruction enhancement for this grouping.

### 2. Group 2 – Contempt of Court and Escape

The offense level for Group 2, for the escape and contempt of court convictions, appears below:

| | | |
|---|---|---|
| a. | Base Offense Level, § 2J1.2(a) | 14 |
| b. | Substantial interference with justice, § 2J1.2(b)(2) | +3 |
| c. | Obstruction of justice, § 3C1.1 | +2 |
| d. | Group subtotal | 19 |

The Guideline for defendant's contempt conviction, 18 U.S.C. § 401(3), is § 2J1.1. U.S.S.G. § 2J1.1. That provision explains that the penal interests for a contempt conviction are "highly context-dependent," but that "[i]n certain cases, the offense conduct will be sufficiently analogous to § 2J1.2 (Obstruction of Justice) for that Guideline to apply." *Id*. The Guideline for contempt also references § 2X5.1, for "Other Offenses," which directs a court to "apply the most analogous offense guideline." U.S.S.G. § 2X5.1.

There are two conceivable analogous Guidelines—escape, § 2P1.1, and obstruction, § 2J1.2—for the escape and contempt charges. The government agrees with, and defendant has not objected to, Probation's determination that § 2J1.2, for obstruction of justice, best captures defendant's conduct. Defendant was convicted of more than merely escaping from a jail or walking away from a halfway house, and that Guidelines provision does not capture the "context-dependent" nature of defendant's contemptuous conduct. His blatant lies and exaggerations regarding his inability to prepare for trial while in custody resulted in his furlough arrangement in the Attorney's Lounge. PSR ¶ 20. This Court put in place stringent requirements for the furlough, which defendant read and signed, to minimize defendant's risk of harming the community or escaping. PSR ¶ 20. Weeks before the February 2015 trial date, defendant violated these specific judicial instructions in numerous ways, including by absconding for six days before he was captured and having his former girlfriend buy him a phone. PSR ¶ 20. His absconding caused the continuance of his trial, the conflict of his attorney, Erik Babcock, and the expenditure of significant government resources in tracking him down. For these reasons, the object and effect of his escape was mainly to delay and obstruct justice further, and § 2J1.2 is the proper

SENTENCING MEMORANDUM
CR 14-306 & CR 08-222 WHA            7

Guidelines provision.

The enhancement for "substantial interference with the administration of justice," § 2J1.2(b)(2), to which defendant also does not object, plainly applies as well. The commentary makes clear that this provision applies when obstruction causes "the unnecessary expenditure of substantial governmental or court resources." U.S.S.G. § 2J1.2 cmt. n.1. Defendant caused the continuance of his trial date, a region-wide manhunt, and the conflict of his taxpayer-funded attorney who had spent months preparing for trial.

Finally, another two-level enhancement under § 3C1.1 for defendant's obstruction during trial of the escape and contempt charges is warranted. The Guidelines note that § 3C1.1 "does not apply" to offenses under § 2J1.2 "unless the defendant obstructed the investigation, prosecution, or sentencing of the obstruction of justice count." *Id.* cmt. n.2(A). In this case, defendant made numerous false statements to the Court and to the jury about his escape and contempt, including that Erik Babcock was responsible for it and that defendant was merely seeking medical care and intending to return for trial. *See, e.g.*, PSR ¶ 38(26). These support the further enhancement.

### 3. Total Grouping

Under the Guidelines, defendant's offense levels of 27 and 19 for each group result in a total offense level of 28. U.S.S.G. § 3D1.4. Defendant is not entitled to any decrease in offense level for acceptance of responsibility, so his total adjusted offense level is 28.

### 4. Criminal History and Guidelines Range for CR 14-306

The government agrees with Probation's calculation of defendant's criminal history score. His score includes three points for his conviction for filing a false tax return and 30 month sentence in CR 08-222, three points for his conviction for Endangered Species Act violations and 15 month sentence in CR 08-236, and two points for committing the instant offense while on supervised release in CR 08-222. PSR ¶¶ 69, 70, 72. This results in a total criminal history score of eight, and a criminal history category of IV. PSR ¶ 73.

Defendant objects to his receiving three criminal history points each for the tax and fish case convictions. But the Guidelines on this issue are clear. As Probation explains, PSR ¶ 70, "[i]f there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from

offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." U.S.S.G. § 4A1.2(a)(2). The sentence in CR 08-222 was imposed on May 24, 2010, and in CR 08-236 on May 26, 2010. The offenses were not contained in the same charging instrument. And though the Guidelines do not explicitly account for this, they were imposed by different judges (this Court and Judge Chesney), for entirely different conduct.

With a criminal history category of IV and a total offense level of 28, defendant's Guidelines range for CR 14-306 is 110 to 137 months.

### C. A Sentence of 137 Months in CR 14-306 Is Sufficient but Not Greater than Necessary to Comply with 18 U.S.C. § 3553(a).

Defendant is a recidivist fraudster and unrepentant liar. He has a lengthy history of lying to people to get what he wants. He has done so in the economic realm for years, and, as the PSR amply demonstrates, he has done the same often before this Court. He will say anything to anyone to serve his own purposes, and has no concern for others and no respect for rules or authority. He attempted to break the criminal justice system with his obstructive conduct in this case. As this Court stated in holding defendant in summary contempt, "[i]n sixteen years on the bench, the undersigned judge has never witnessed such disrespectful conduct in clear violation of the Court's orders." Dkt. 529 at 2. Though this statement was made in reference to defendant's conduct at trial, it applies equally to his conduct on supervision, his offense conduct, and his conduct throughout the case.

No prior punishment or supervision has been able to deter him, and whether his conduct is motivated by his narcissism or some other mental illness or personality disorder, he is unable to conform to the laws of society and the rules of the judicial system. His conduct must be punished severely, and as he appears undeterrable, he must be incapacitated for a lengthy period of time. A sentence of 137 months is appropriate.

#### 1. Nature and Circumstances of the Offense

Defendant's fraud is unique in its total brazenness and in the pyramid of lies he told in committing it and then in denying it. When defendant expressed interest in paying $11 million for artwork that, as it turns out, is worth approximately $1.99 million, Rose Long and Walter Maibaum saw a deal that was simply too good to be true. When Rose Long offered to ship crates of artwork to

SENTENCING MEMORANDUM
CR 14-306 & CR 08-222 WHA                  9

defendant's "museum," with no earnest money deposit, defendant saw an easy way to get something of value without paying for it. He lied to do so, telling Rose Long that he would buy the artwork for millions of dollars and put it in a museum. PSR ¶ 12–15. Then he stalled for time, lying to Rose Long directly or through his attorney, Bob Kane, to keep the artwork. PSR ¶ 16–17. During this time, defendant asked for a ransom payment to return the artwork. PSR ¶ 17. He lied about the artwork being a gift. PSR ¶ 17. He lied about receiving the Hermitage Museum book associated with the Valsuani Degas sculptures. PSR ¶ 16. And then he executed his plan to steal the most valuable work of art in the transaction, the Degas sculpture, and deny that he ever received it. PSR ¶ 18. All this time, he never inspected the artwork with Long as she repeatedly asked him to do. PSR ¶ 16–17.

Defendant's lies continued throughout this case. The PSR recounts them in detail in paragraphs 37 and 38. He told multiple lies to the magistrate courts and this Court to get himself out of custody. *See, e.g.*, PSR ¶¶ 37(a), 37(c), 37(d), 38(3), 38(11), 38(12), 38(23), 38(24), 38(28). He lied under oath about numerous topics at his Form 12 hearing in June 2014—most notably, he lied about the phantom phone call he claimed to receive from someone at Sotheby's telling him that the Degas and de Koonings were fake, and he was convicted of this lie at trial. PSR ¶ 19 (Sotheby's call); *see also* PSR ¶¶ 38(2), 38(11), 38(13), 38(17), 38(18), 38(19) (many other lies). At that hearing, he also lied about Nick Barbato financing the museum, lied about the number of crates he received, and lied by repeatedly implying that he had only told Rose Long that the artwork was a gift on the advice of counsel. PSR ¶¶ 38(3), 38(15), 38(30).

He also lied in attempts to slow down or disrupt the judicial system. His motion to recuse the United States Attorney's Office was based entirely on a series of lies. PSR ¶¶ 37(b) (FBI interview of Kay Brugnara), 38(7) (BOP classification), 38(21) (fight at FCI La Tuna). He repeatedly attacked members of the United States Attorney's Office personally, and then lied about that as well. PSR ¶ 38(31). Many of the times defendant lied, this Court was forced to investigate his statements, and hold evidentiary hearings to consider their truth. The government was forced to call witnesses and present evidence, and brief the Court extensively. The amount of resources required by the judicial system to rebut his lies was astonishing, and his lies dragged third parties with no connection to the case into the dispute, including Barbato and four employees of Sotheby's in New York.

Defendant then lied to this Court in promising to abide by the terms of his furlough, and on February 5, 2015, escaped from custody. PSR ¶ 20. After he was captured, he lied about why he escaped, variously blaming it on Erik Babcock and claiming that he was seeking emergency medical care. PSR ¶ 38(26).

Defendant finally lied repeatedly during trial. The PSR outlines many of these lies in detail. Some were in the form of plainly false statements, and others in the form of improper questioning that laid falsehoods before the jury. PSR ¶¶ 38(32)–38(42). In many instances, the government was simply unable, given the limited time constraints and nature of the trial, to rebut each of these statements to the jury. Defendant's obstructive conduct during trial, while substantial, is only partially reflected in the 471 days of summary contempt. His many lies during trial are not included in the summary contempt.

Defendant's offense conduct also includes his complete lack of acceptance of responsibility, epitomized by his many lies and his failure to return the Degas sculpture. In few fraud cases is defendant's continued possession of the object of his fraud so clear after conviction. In even fewer cases does a defendant conduct an interview with a local television news station after his conviction and state that he is completely innocent. PSR ¶ 39.

This conduct is exceptional. A small number of his lies, including the lies about the Sotheby's phone call and about the contempt and escape, are reflected in his Guidelines. Many others are not, and a defendant who simply perjured himself on a single issue would be subject to the same two-level enhancement for obstruction of justice for the fraud grouping as defendant is. This exceptional conduct warrants an exceptional sentence, and could support a substantial variance, though ultimately, the government is only recommending a sentence of 137 months of imprisonment for CR 14-306, at the high end of the Guidelines range. Such a sentence reflects the need to punish defendant for his conduct, and to provide general deterrence both against fraud and against the rampant obstructionism defendant brought to this case.

The government anticipates that the defense will argue that defendant is entitled to a downward variance because the artwork was worth less than the prices quoted to him. This argument should be rejected. The actual, lesser valuation of the artwork is reflected in the Guidelines. However one views the conduct of Long and Maibaum, defendant was not a victim of their fraud. He knew what he was

SENTENCING MEMORANDUM
CR 14-306 & CR 08-222 WHA            11

getting, he never inspected it, and he never intended to pay for it.  Maibaum and Long would have never shipped the artwork to his garage with no earnest money payment had he agreed to pay a reasonable price for it.  It was a crucial part of his fraud.  This Court need not determine what Long and Maibaum knew about the artwork to sentence defendant.  Defendant defrauded them of $1.99 million of artwork, and never returned a sculpture worth approximately $1.76 million and for which Maibaum paid hundreds of thousands of dollars.  He knew exactly what he was doing the entire time.

### 2.    History and Characteristics of Defendant

Defendant's history and characteristics also support an extraordinary sentence.  In addition to being a liar, defendant is a bully who uses physical and legal threats to get his way.  He evicted a tenant as a reprisal.  PSR ¶ 38(29).  He threatened the life of a nurse in jail, and attempted to bribe his way out of custody.  PSR ¶ 78.  He threatened and harassed his brother and the mother of his child, violating a restraining order in so doing.  PSR ¶¶ 68, 75, 77(C), (D).  He threatened a receiver, a deputy city attorney, and San Francisco fire inspector.  PSR ¶ 77(A), (B).  He threatened to kill two witnesses set to testify in one of his prior cases in 2010.  PSR ¶ 76.   He threatened staff at the halfway house, stating that this Court would shut down the halfway house if the employees would not give defendant what he wanted.  PSR ¶ 38(12).  He repeatedly threatened or attacked Assistant United States Attorney Robin Harris and former Assistant United States Attorney Doug Sprague.  PSR ¶ 38(31) ("Because I guarantee you, after I win this case, this man will be out of a job, and his name will be smeared as an attorney for life."); *id.* ("Guess What?  Everyone is going to get fired.  Everyone is going to get sued.").  He started the fight in FCI La Tuna about which he later lied as basis for his recusal motion.  PSR ¶ 38(21) ("[T]he BOP determined the fight was instigated by the defendant . . . [t]he defendant insinuated to another inmate that he was gay, then the defendant grabbed the other inmate and took him to the ground while wrestling with him and saying 'have you had enough?'").  Defendant has no respect for the law and for basic rules of human conduct.

Defendant also committed this overwhelming fraud despite being given every opportunity in life.  Defendant's father worked in law enforcement.  PSR  ¶ 82.  He had a supportive, loving upbringing, and was afforded many advantages in life.  PSR ¶ 84.  Defendant graduated from St. Ignatius High School and from San Diego State University.  PSR ¶ 106–107.  Defendant even attended one year of law

school. PSR ¶ 106. Defendant was a very wealthy man at one point, amassing a fortune in real estate in San Francisco and Nevada. PSR ¶ 87. Though he lost his fortune, in part through his repeated criminal conduct resulting in two separate sets of federal convictions, his favorable circumstances in life are unique among most federal defendants.

Defendant's mental health diagnoses also support an extraordinary sentence. Prior mental health evaluations report that he is "of above-average intelligence, with intact memory and orientation." PSR ¶ 100. His "thought process was not devoid of rationality, [but] it typically was impulsive, uninhibited, and mildly disorganized." PSR ¶ 101. He has been diagnosed with narcissism, the symptoms of which—grandiosity, self-importance, sense of entitlement, arrogance, and lack of empathy—fit perfectly defendant's behavior as observed in this case and throughout the PSR. PSR ¶ 102. The defense submitted a psychological report which only confirms what is clear from his behavior and prior psychological reports—that he has bipolar tendencies, psychotic ideation, and narcissism. PSR ¶ 103. This report offers no new information, and no indication that there is any realistic treatment that can modify defendant's extremely pathological personality.

At bottom, the psychological reports, including that submitted by defense in anticipation of sentencing, confirm that defendant is a dangerous individual who needs to be incapacitated. Whatever the ultimate psychiatric or neurological explanation for defendant's lies, threats, and crimes, no prior supervision, mental health treatment, or criminal justice sentence has deterred him from lying to get what he wants. As soon as he is released from custody, he will reoffend. A high-end sentence is needed to incapacitate him and prevent his incredibly likely recidivism.

**D.     A Consecutive Sentence of 12 Months of Imprisonment for CR 08-222 Is Appropriate.**

U.S. Probation has recommended that defendant's Guidelines for his supervised release violation are 6 to 12 months. Violation Memo at 3. The government agrees. Defendant's convictions for wire fraud, mail fraud, false declarations, and escape are all punishable by a term of imprisonment exceeding one year, and are thus Grade B violations. U.S.S.G. § 7B1.1(a)(2). Defendant's criminal history at the time of his prior sentencing in CR 08-222 was II. Violation Memo at 3.

As a result, the revocation table at § 7B1.4(a) provides a Guidelines range of 6 to 12 months.

SENTENCING MEMORANDUM
CR 14-306 & CR 08-222 WHA                    13

Under § 3553, the government recommends a sentence at the high end of that range, of 12 months, for CR 08-222. Defendant has a lengthy history of lying to Probation and evading collection of his restitution judgment in CR 08-222. For example, on June 4, 2013, Probation charged defendant with five violations of the terms of his supervision, alleging variously that he had unlawfully possessed a firearm and had lied about his various assets. CR 08-222 Dkt. 189. On October 29, 2013, defendant admitted two of the charges, including that he had lied to his probation officer on at least two occasions about his control of certain assets. CR 08-222 Dkt. 230, 231. On April 29, 2014, a new probation officer filed another violation memorandum, alleging that defendant failed to pay his restitution, failed to submit reports to Probation, and had, yet again, lied to Probation regarding his financial condition. CR 08-222 Dkt. 242.

He has, in sum, shown contempt for this Court and Probation's supervision of him in CR 08-222, and no other aspect of his sentencing accounts for this. He should be sentenced to 12 months for his violation.

### E. A Consecutive Sentence of 471 Days of Summary Contempt Is Appropriate.

For defendant's repeated abusive and contumacious conduct during trial, this Court has already convicted and sentenced defendant to 471 days of summary contempt, to be served consecutively to any other sentence imposed in this case. Dkt. 529, 547, 561, 592, 606, 626. The government recommends that this sentence be included in the final judgment.

### F. Restitution

Probation recommends delaying a finding of restitution pending a restitution hearing. The government does not believe this is necessary. Restitution should be ordered for Walter Maibaum for the value of the Degas sculpture at $1.76 million.

Maibaum and Long are also entitled to restitution for their other losses proximately caused by defendant. Maibaum incurred $170,000 in attorney's fees trying to get his property back and responding to the government's and defendant's requests and subpoenas as part of this case. PSR ¶ 33. Long incurred $14,519 in legal fees, and $12,524.56 in other expenses traveling to and staying in San Francisco in April 2014, all in attempts to get her property back. Dkt. 744. Under 18 U.S.C. § 3663(b)(4), restitution should "reimburse the victim for lost income and necessary child care,

transportation, and other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." These expenses are included, and lead to a restitution order of $1,930,000 for Walter Maibaum, and $27,043.56 for Rose Long.

## CONCLUSION

With full consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court impose a sentence of 149 months of imprisonment followed by another 471 days of imprisonment, followed by three years of supervised release, and restitution.

DATED: October 1, 2015

Respectfully submitted,

BRIAN J. STRETCH
Acting United States Attorney

\_\_\_\_\_/s/_____
ROBIN L. HARRIS
BENJAMIN KINGSLEY
Assistant United States Attorneys